IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>

BEVERLY SMITH, et al.,

          Plaintiffs,

   v.

STATE OF NEW JERSEY, et al.,

          Defendants.

</td><td>

Civil Action
No. 09-4268 (JBS/KMW)


**OPINION**

</td></tr>
</table>

APPEARANCES:

Anthony Granato, Esq.
Jarve Kaplan Granato, LLC
10 Lake Center Executive Park
401 Route 73 North, Suite 204
Marlton, NJ 08053
    Attorney for Plaintiffs Beverly Smith and Joe Smith

Vincent J. Rizzo, Jr., Deputy Attorney General
Marvin L. Freeman, Deputy Attorney General
Office of the NJ Attorney General
RJ Hughes Justice Complex
25 Market Street
PO Box 112
Trenton, NJ 08625-0112
    Attorney for Defendants State of New Jersey, New Jersey
    State Police, and State Trooper Carlos Rodriguez

**SIMANDLE,** Chief Judge:

## I. INTRODUCTION

This matter comes before the Court on two motions:

Plaintiffs' Motion in Limine to admit Plaintiffs' expert witness

Timothy Longo's testimony [Docket Item 54] and Defendants'
Motion in Limine to preclude portions of Longo's testimony and
to admit a 911 call log and tape related to this cause of action
[Docket Item 56]. Plaintiffs filed Opposition [Docket Item 60],
but Defendants did not. The Court heard oral argument on July 9,
2013.

The Court will reserve decision until trial on the
admissibility of the 911 call evidence. The Court will preclude
Longo's testimony because he expresses opinions that are simply
the application of constitutional law to the facts of the case
and thus usurp the province of the Court and because he
speculates about the police officers' state of mind in ways that
are unhelpful to the fact-finder, are not reliable, and are not
based upon specialized knowledge.

## II. BACKGROUND

### a. Factual Background

Plaintiffs Beverly Smith and Joe Smith brought this action
against Defendants State of New Jersey, the New Jersey State
Police, and State Trooper Carlos Rodriguez.

On June 24, 2007, at approximately 12:05 a.m., Defendant
Carlos Rodriguez, a New Jersey State Policeman, was in the area
of Chase and Louis Streets in Camden, New Jersey, conducting a
narcotics investigation. (Joint Final Pretrial Order at 2, ¶ 1.)

At that time, Plaintiffs Joseph Smith and Beverly Smith were in their home on Chase Street. (Id. ¶ 2.) Detective Rodriguez reportedly heard "yelling, cursing, and furniture being moved" and a voice asking someone to call the police. (Expert Report of Timothy J. Longo, Sr., ("Longo Report") ¶¶ 13-15.) Detective Rodriguez and Trooper B. Carswell, another New Jersey State Policeman, approached the Plaintiffs' home, from which they believed they heard the noise. (Id. ¶ 16.) They opened the front door, entered the home and, after an altercation, arrested Joseph Smith. (Id. ¶ 22-24.) During the altercation, the police sprayed a chemical irritant into Mr. Smith's face. (Id. ¶ 24.) Mr. Smith was charged with disorderly conduct, obstructing administration of law or other government function, and resisting arrest; all charges against him were dismissed. (Joint Final Pretrial Order at 2, ¶¶ 3-4.)

Plaintiffs allege that the entry into their home was unlawful and that Trooper Rodriguez used excessive force in arresting Joseph Smith. Plaintiffs assert claims for violations of 42 U.S.C. § 1983, the New Jersey State Constitution, and the New Jersey Civil Rights Act, arising from the constitutional rights to be free from unlawful arrest, excessive use of force in making an arrest, and warrantless entry into Plaintiffs' home.

**b. Procedural History**

Plaintiffs originally filed their Complaint in the Superior Court of New Jersey Law Division, Camden County. Defendants removed the action to this Court.

Defendants filed a motion for partial summary judgment arguing that federal claims against Defendants State of New Jersey, the New Jersey State Police, and Trooper Rodriguez in his official capacity are barred by the Eleventh Amendment to the United States Constitution and by the definition of persons who may be liable under § 1983. The Court granted the motion and held: "Count I, which alleges violations of 42 U.S.C. § 1983, is dismissed against Defendants State of New Jersey, New Jersey State Police, and Trooper Carlos Rodriguez acting in his official capacity. Count I is not dismissed against Trooper Carlos Rodriguez acting in his individual capacity." Smith v. New Jersey, 908 F. Supp. 2d 560, 564 (D.N.J. 2012). In summary judgment briefing, the parties did not present any arguments about and the Court did not consider Plaintiffs' claims regarding the New Jersey State Constitution, the New Jersey Civil Rights Act, assault, battery, and false imprisonment.[1]

---

[1] At the pretrial logistics conference before the undersigned on March 22, 2013, counsel agreed that the remaining claims against the State of New Jersey are alleged to arise under the New Jersey Constitution, alleging respondeat superior liability for false arrest, excessive force, and warrantless entry, and that

4

The parties consented to a bench trial, which will commence on July 16, 2013. [Docket Item 52.]

## III. EXPERT REPORT

### a. Report Summary

Plaintiffs' expert witness, Timothy Longo, produced an expert report describing: his experience as a police officer and as an instructor of legal classes[2]; the June 24, 2007 incident; the legal basis for police officers to enter homes; his conclusion that the police officers' entry into the Smith home was unreasonable; the legal basis for disorderly conduct arrests; his conclusion that there was no probable cause to support an arrest; the legal basis for police officers to use force; his conclusion that the force used was unreasonable; and his conclusion that Officer Rodriguez and the New Jersey State Police are vicariously liable for the officers' unreasonable actions.

---

the remaining claims against Officer Rodriguez arise under 42 U.S.C. § 1983 for false arrest, excessive force, and warrantless entry. At the hearing on July 9, 2013, the State of New Jersey disputed that the New Jersey Civil Rights Act or the New Jersey Constitution give rise to a cause of action against the State or the State Police, a question that is not presented in this motion.

[2] Longo has a Bachelor of Science degree from Towson University and a law degree from the University of Baltimore, School of Law. [Docket Item 54-2 at 2.]

Longo's analysis contains four primary sections: Home Entry, The Arrest, The Use of Force, and Officer Rodriguez's responsibility and the vicarious liability of the New Jersey State Police Department. For the home entry, arrest, and use of force sections, Longo determines whether the officers' actions were "reasonable and consistent with generally accepted policing practices and standards." (Longo Report ¶ 26.)

The report contains legal conclusions and citations to case law and statutes. For example, Longo states, "[t]wo recent United States Supreme Court cases are especially instructive in evaluating whether Detective Rodriguez's entry into Beverly Smith's home satisfied the emergency aid exception, and thus was reasonable and consistent with generally accepted policing practices and practices [sic]; Brigham City v. Stuart, and Michigan v. Fisher." (Longo Report ¶ 36.) Longo concludes that the officers' entry was "unreasonable and inconsistent with generally accepted policing practice and standards" because "[u]nlike the officers in both Stuart and Fisher, Detective Rodriguez had no objective basis, sans words heard from a distance of 50 yards, to support an objectively reasonable belief that someone inside was in need of emergency aid." (Longo Report ¶¶ 44-45.) In another example of his legal analysis, the section regarding vicarious liability of Officer Rodriguez and

the New Jersey State Police Department states that "[t]he New Jersey State Police Department is responsible and vicariously liable for the actions of all of its officers participating in all of the arresting events involving Mr. Smith under both the New Jersey State Constitution and the New Jersey Civil Rights Act." (Longo Report ¶ 85.)

Longo also discusses the history of disorderly conduct statutes. He describes circumstances in which "an arrest occurs in the aftermath of an exchange between a citizen who verbally opposes or challenges a police officer," thus raising the question of "whether the conduct sufficiently satisfied all of the elements of the relevant statute(s) or whether the arrest was a quick, spiteful, and poorly thought-out response to a perceived 'contempt of cop' situation." (Longo Report ¶ 54.) Longo describes the arrest of Harvard Professor Henry Louis Gates when trying to enter his own home as a prominent example of "contempt of cop" situations and analogizes the Gates incident to this case.

### b. Parties' Arguments

Plaintiffs argue that their expert witness, Chief Timothy Longo, is qualified to testify because he has a juris doctor degree and extensive experience in law enforcement, including serving as the Chief of Police in Charlottesville, Virginia.

Longo authored the Virginia Search and Seizure Manual for Law Enforcement Officers and instructed various classes on substantive and procedural criminal law, constitutional law, and liability in law enforcement operations. Plaintiffs argue that Longo possesses specialized expertise in police practice and procedure and relevant law.

Plaintiffs also argue that Longo's report is reliable because he sets forth clear factual bases for his opinions, relies on his extensive expertise in both law and police procedures, and analyzes the evidence relative to applicable statutes, regulations, and case law.

Finally, Plaintiffs argue that Longo's testimony fits the matters in issue because his opinions "go directly to the matters in dispute . . ., namely whether the entry into Plaintiff's home was justified and appropriate; whether the subsequent arrest was proper under the circumstances; and whether the use of force was appropriate or excessive under the circumstances." (Pl. Mot. at 7.) Plaintiffs argue that Longo's testimony "is designed to assist the trier of fact in making a determination as to the police procedures employed by the Defendant relative to the applicable law that governs them." (Pl. Mot. at 7.)

Defendants argue that Longo's testimony should be excluded pursuant to Fed. R. Evid. 702. Defendants argue that Longo's conclusions and opinions are not based on valid methodology, are neither reliable nor relevant, are speculative, and venture into areas in which he has no expertise. In addition, Defendants argue that Longo may not assert legal opinions because doing so usurps the Court's role and that he may not offer legal conclusions regarding ultimate issues. Finally, Defendants argue that Longo may not make assumptions about the officers' intent and state of mind.

Defendants also request that, because Longo's report lacks information about the quality, quantity, nature, and adequacy of the training given to the State Police troopers and about the effect of such training on the incident, the Court should bar testimony regarding training.

### c. Longo's Testimony about Legal Conclusions and Case Law Is Precluded

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The District Court has discretion to determine whether expert testimony will help the trier of fact." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006).

This Rule has been distilled into "a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider ex. rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). Qualification refers to the requirement that the witness possess specialized expertise. The Third Circuit has interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert as such." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). Reliability means that the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation . . . ." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993). The fit requirement "goes primarily to relevance by demanding a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. at 580.

In addition, "the District Court must ensure that an expert does not testify as to the governing law of the case . . . . an expert witness is prohibited from rendering a legal opinion." Berckeley Inv. Grp., 455 F.3d at 217 (citation omitted). "Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." Id. In this case, the parties have consented to a bench trial but, even in the bench trial context, an expert witness must offer specialized knowledge and expertise, not legal analysis and conclusions.

As will now be discussed, the Court finds that Longo's report is replete with legal conclusions and citations to cases and statutes. The Court will grant Defendants' motion to exclude the aspects of his report involving legal analysis; allowing Longo to testify on such matters would usurp the Court's role.[3] The Court must exclude expert witness testimony on police practices when such "testimony involve[s] only [the expert's] views concerning the reasonableness of the officers' conduct in light of "Fourth Amendment standards'" because this testimony "[i]s not a fact-based opinion, but a statement of legal

_____

[3] Nothing herein suggests that Chief Longo is not an expert in police practices. The focus, instead, is whether an expert's testimony is admissible in terms of fitting the issues, being derived from a reliable methodology, and assisting the factfinder where constitutional law, not accepted standards of police practice, are at stake.

conclusion. The legal conclusions [a]re for the court to make."

Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995);

see also United States v. Williams, 343 F.3d 423, 435 (5th Cir.

2003) ("Reasonableness under the Fourth Amendment or Due Process

Clause is a legal conclusion.")

In their Opposition [Docket Item 60], Plaintiffs explain

that they "are not asking Chief Longo to tell the judge what the

law is but rather to elaborate on what a police officer should

know about the law." (Pl. Opp'n at 6.) Plaintiffs emphasize that

Longo "obtained a Juris Doctorate, which further helps him

understand the legal aspects of policy and procedure." (Pl.

Opp'n at 5.) Longo's report does not, however, offer any

discussion of how police officers are trained or informed about

the law. Police training is not an issue here; Plaintiffs do not

claim that the State failed to properly train Officer Rodriguez,

and the Joint Final Pretrial Order nowhere suggests that

Rodriguez's training is an issue. Further, what a reasonable

police officer would have known about unconstitutional police

conduct, on which Chief Longo expresses his views, might be

relevant to an analysis of qualified immunity, but that is not

an issue at trial. Plaintiffs do not explain why Longo's legal

knowledge and extensive case and statute citations should be

within the knowledge of New Jersey State Police officers.

Most importantly, Chief Longo's opinions about "generally accepted policing practice and standards," which comprise largely his entire report, do not fit the issues in this case. No issue in this case depends on establishing normal police practices or a deviation therefrom; the standards of conduct are measured by the U.S. Constitution and by the analogous provisions of the New Jersey Constitution. These provisions do not constitutionalize tort law; whether a particular officer followed accepted police practices is not the inquiry. A policeman may act or react in violation of desirable standards of police conduct without necessarily violating the constitution, and vice versa. Ultimately, determining the constitutional standards is a function of the judge, and no other standards apply to the remaining claims to be tried. Whether the police entry was unlawful, whether the seizure of Plaintiffs was unlawful, and whether excessive force was used are all to be determined under the constitutional provisions and precedents, and these are not facts amenable to an expert's opinion.

In short, Rule 702, Fed. R. Evid., does not permit the testimony of a police practices expert who is rendering opinions about whether particular conduct violated the relevant constitutional provisions.

### d. Longo's Testimony Regarding Henry Louis Gates and the Troopers' Feelings Will Be Precluded

At oral argument, the Court asked Plaintiffs which aspects of Longo's report should be admitted if the Court precluded Longo's testimony regarding case law and statutes. Plaintiffs proposed paragraphs 53-61 and 64 of Longo's report, which describe the "contempt of cop" concept and the arrest of Harvard Professor Henry Louis Gates. For the reasons explained herein, testimony regarding the matters contained in these paragraphs will also be excluded.

Paragraph 54 states that, when an arrest occurs after an exchange between a citizen and an officer, "the question that immediately arises is whether the conduct sufficiently satisfied all the elements of the relevant statute(s) or whether the arrest was a quick, spiteful, and poorly thought-out response to a perceived 'contempt of cop' situation." (Longo report ¶ 54.) As explained above, the expert has no province to assess whether the elements of relevant statutes were satisfied; that assessment is a legal determination. And Longo's report does not describe any specialized expertise to assess the officers' motivations in arresting Mr. Smith.

Paragraph 55 introduces the concept of "contempt of cop," but it does not discuss any empirical studies of this phenomenon. Paragraphs 56 through 60 describe the arrest of

Harvard Professor Henry Louis Gates. Even if the arrest of Professor Gates exemplifies "contempt of cop," an issue on which the Court takes no opinion, this sample size of one incident does not provide any empirical framework or specialized expertise for the fact-finder to assess this case. Moreover, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 (citation omitted).

Paragraphs 59 and 60 describe a report that "provides for a comprehensive review of the interaction between Sergeant Crowley and Professor Gates . . . ." (Longo Report ¶ 59.) Longo explains that this report examines legitimacy and procedural justice and emphasizes that "[b]alancing the two with the tactical and safety considerations of the police is critical." (Longo Report ¶ 60.) Longo's description of the Gates report does not provide any specialized expertise to assist the fact-finder in this case.

Paragraph 61 speculates about the officers' state of mind on June 24, 2007: "I suppose Joe Smith's conduct on the morning of June 24, 2007, was disturbing to the trooper's [sic] who were on the scene; they were allegedly cursed at and their authority was challenged." (Longo Report ¶ 61.) The Court will exclude Chief Longo's testimony regarding his assumptions about the

troopers' potential feelings during their altercation with Mr. Smith. Longo "is without the psychological or other relevant background or expertise to testify to the state of mind" of Defendants. Roberson v. City of Phila., 2001 U.S. Dist. LEXIS 2163, at *24 (E.D. Pa. Mar. 1, 2001). In addition, Longo asserts that "there is no testimony whatsoever that any member of the public was affected by Joe Smith's behavior." (Longo Report ¶ 61.) The fact-finder, not the expert, must make this determination.

Paragraph 64 states that, like Officer Crowley in the Gates situation, "Detective Rodriguez failed to take steps to 'ratchet down' the situation . . . . Had he done so, Joe Smith might not have challenged the police's authority and might never have been the subject of the unlawful and unreasonable arrest." (Longo Report ¶ 64.) Longo has not provided any empirical support to analogize this case to the Gates incident and he cannot speculate about how Plaintiff Joe Smith might have acted differently.

In addition to excluding Longo's testimony about legal conclusions, the Court will exclude testimony regarding the topics contained within paragraphs 53-61 & 64 because such testimony will not provide specialized expertise to reliably assist the fact-finder in determining relevant factual issues in

this particular case. All of these are legal points that Plaintiffs' counsel is free to argue, but such arguments may not be received as expert testimony on the claims in this case.

**IV. CONCLUSION**

Longo's testimony will be excluded because his expert opinions do not satisfy the requirements of Fed. R. Evid. 702. The Court will decide evidentiary disputes regarding the 911 call at trial, after the opportunity to hear witnesses. Trial will commence at 9:00 a.m. on Tuesday July 16, 2013.


  **July 11, 2013**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge